# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ELIE RANDOLPH** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-2165** |
| **NATIONSTAR MORTGAGE, LLC** | **SECTION: "G"(5)** |

## ORDER AND REASONS

Before the Court is Plaintiff Elie Randolph's ("Plaintiff") Motion for Preliminary Injunction.[1] Having considered the motion, the response, the reply, the supplemental response, the sur-reply, the stipulations of the parties, and the applicable law, for the following reasons, the Court will deny Plaintiff's Motion for Preliminary Injunction.

## I. Background

### A. *Procedural Background*

On August 30, 2011, Defendant Nationstar Mortgage, L.L.C. ("Nationstar) removed this action from the 24th Judicial District for the Parish of Jefferson,[2] where Plaintiff filed a Verified Petition for Preliminary and Permanent Injunction.[3] That petition sought an injunction arising from claims asserted in a case also filed in the 24th Judicial District, styled *Elie Randolph v. GeoVera Speciality Insurance Services, Inc. and Nationstar Mortgage, L.L.C.*, No. 703816. That action was removed to this Court by defendant GeoVera Specialty Insurance Services, Inc. on August 26,

---

[1] Rec. Doc. 5.

[2] Rec. Doc. 1.

[3] Rec. Doc. 1-1.

2011.[4] In that action, Plaintiff seeks to recover for damages caused by a fire in Plaintiff's home that occurred during a period when Plaintiff was not covered by homeowner's insurance, a coverage gap that was allegedly the fault of Nationstar.

In this act, Plaintiff seeks injunctive relief relating to escrow funds used by Nationstar to obtain insurance for Plaintiff as well as Nationstar's practices and procedures related to obtaining such insurance.[5] In his Motion for Preliminary Injunction, Plaintiff seeks to enjoin Nationstar from "using escrow funds for its own benefit"[6] until Nationstar improves its practices[7] and "conduct[s] its business properly."[8] According to Plaintiff, without a court order, "Nationstar will continue to take money to which it is not entitled while Plaintiff and other customers continue to pay for coverage that does not exist . . . ."[9] Plaintiff further alleges "continuing . . . non-pecuniary effect including anxiety and concern over whether his home is insured . . . ."[10] Plaintiff alleges that Nationstar engages in a "pattern of delay, bad faith, and arbitrary and capricious conduct" by using escrow funds with "complete disregard" to its obligations to timely pay insurance premiums from escrow.[11] Plaintiff advances three theories under which he believes his claims merit relief: (1)

---

[4] That action proceeds as Civil Action No. 11-2150 before this Court.

[5] Rec. Doc. 1-1.

[6] Rec. Doc. 5 at p. 1.

[7] *Id.* Plaintiff specifically outlines numerous things that Plaintiff believes Nationstar should have to demonstrate to this Court.

[8] Rec. Doc. 5-1 at p. 9.

[9] *Id.* at pp. 9-10.

[10] *Id.* at p. 10.

[11] *Id.* at p. 2.

breach of fiduciary duty, (2) breach of contract, and (3) violations of the Real Estate Settlement Procedures Act.[12]

Nationstar filed its opposition on September 27, 2011,[13] and Plaintiff filed his reply on October 13, 2011.[14] Following the submission of stipulations by both parties on December 30, 2011,[15] Plaintiff requested leave to file his supplemental brief in support of motion for preliminary injunction, which this Court granted and which was filed into the record on January 4, 2012.[16] Nationstar then requested leave to file its sur-reply, which this Court granted and which was filed into the record on January 9, 2012.[17]

### B. Factual Background

*1. Uncontested Facts*[18]

On January 29, 2007, Plaintiff executed a promissory note, secured by a mortgage on Plaintiff's home in Harvey, Louisiana. The mortgage provided that "Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section," including "premiums for any and all Insurance." Nationstar became the servicer on Plaintiff's loan and mortgage on or about October 1, 2009 and began collecting Plaintiff's monthly mortgage payments at that time. A portion

---

[12] 12 U.S.C. § 2605.

[13] Rec. Doc. 11.

[14] Rec. Doc. 17.

[15] Rec. Docs. 22, 23.

[16] Rec. Doc. 28.

[17] Rec. Doc. 32.

[18] These facts are taken from the Stipulations of Nationstar, Rec. Doc. 22, and the Stipulations of Plaintiff, Rec. Doc. 23. Each set of stipulations was reviewed and approved by counsel for the other party.

of each of Plaintiff's monthly mortgage payments was placed in escrow for Nationstar to pay the property tax, homeowner's insurance premiums, and flood insurance premiums on the property as they became due.

Plaintiff's home was insured for fire by GeoVera Specialty Insurance Company ("GeoVera") at all material times except for the period of January 22, 2011 through January 31, 2011. During that coverage lapse, the property was insured for fire by American Security Insurance Company ("ASIC"). At all material times Plaintiff continued to make his monthly mortgage payments to Nationstar and Nationstar received these funds, including those designated for escrow.

Nationstar had previously paid, from escrow, the renewal premiums to insure Plaintiff's home with GeoVera. However, in approximately July 2010, Plaintiff attempted to refinance his mortgage through Wells Fargo Bank, N.A. ("Wells Fargo"). Although Plaintiff did not complete the refinancing, the renewal notice issued by GeoVera on November 18, 2010 was sent to Plaintiff and incorrectly sent to Wells Fargo as mortgagee, rather than Nationstar, the correct mortgagee. The second renewal notice sent by GeoVera on January 3, 2011, a renewal cancellation notice and renewal offer, was also sent to Plaintiff and Wells Fargo. On January 25, 2011, GeoVera issued a notice of cancellation, which was mailed to Plaintiff and Wells Fargo. Although Plaintiff states that he does not recall receiving any of these notifications, he agrees that all were sent to him at his correct home address.

Nationstar employs ASIC to manage borrower insurance compliance issues, and Nationstar forwards any insurance-related notices to ASIC on a daily basis. Each Monday, ASIC produces a report showing hazard insurance status by expiration and loan number, pulling loans with policies within fourteen days of expiration. Having not received a renewal notice from GeoVera regarding

4

the insurance policy on Plaintiff's home, ASIC made an "open items" phone call to inquire about renewal to GeoVera on January 18, 2011. This was in compliance with ASIC's policy of making an open items call to inquire about coverage within zero to twelve days before an insurance expiration date. After making the open items call, ASIC then issued and mailed a check for the renewal premium to GeoVera on January 19, 2011. It is ASIC's standard policy to pay insurance premiums by first class mail and to issue force-placed coverage for any resulting gap in coverage. ASIC issues force-placed coverage to Nationstar when an uninsured loss occurs to mortgaged property where the loss should have been covered. Such force-placed coverage is effective for the entire coverage gap, and ASIC matches or mirrors the coverage terms and insurance premium of the prior outside coverage when ASIC finds after investigation that ASIC, rather than the borrower, was responsible for the lapse in coverage.

On January 24, 2011, a grease fire erupted in the kitchen of Plaintiff's home, causing damage. The next day, Plaintiff reported the fire to GeoVera, but GeoVera denied coverage, alleging that it did not receive the renewal premium from ASIC until January 31, 2011. ASIC issued force-placed replacement fire coverage to Nationstar for Plaintiff's home for the period of January 23, 2011 through January 31, 2011. Plaintiff has not been charged for this coverage. Furthermore, ASIC has tendered all due policy benefits to Plaintiff to cover the damages sustained in the fire.

A new GeoVera policy, which became effective on February 1, 2011, now covers Plaintiff's home for fire, and Nationstar advised GeoVera to correct GeoVera's error in omitting Nationstar from renewal notices regarding Plaintiff's home. Nationstar is now recognized by GeoVera as the mortgagee of Plaintiff's home. Further, having already received a renewal notice from GeoVera, Nationstar calendared the renewal payment due for the policy on Plaintiff's home to be paid fifteen

5

days prior to the February 1, 2012 due date, such that an open items call would not be necessary.[19] No party has indicated that Plaintiff's policy was not renewed at this time.

Prior to issuing the force-placed coverage policy effective for the period during which the fire occurred, ASIC issued a force-placed insurance policy for the period of February 8, 2011 until February 8, 2012. However, Nationstar admitted that the policy was issued in error, and the policy was cancelled, although cancellation notice was not sent to Plaintiff. ASIC issued additional force-placed insurance policies for Plaintiff's home, which were also cancelled without notice to Plaintiff. Plaintiff also received several letters informing him of the expiration of hazard insurance policies; the letters did not indicate the policy numbers or insurance company names.

*2. Additional Facts*[20]

Plaintiff alleges that he sent a request for information to Nationstar regarding the non-payment of the claim by GeoVera, to which Plaintiff first received a response stating that an investigation was being made.[21] Plaintiff further alleges that shortly thereafter he received a response from Nationstar, in which the company absolved itself of responsibility for the coverage gap.[22]

Additionally, Plaintiff alleges that Nationstar provided Plaintiff with notice on May 19, 2011 that his flood policy with State Farm Fire and Casualty Company ("State Farm") had "expired,

---

[19] Plaintiff notes that Nationstar and ASIC practices and procedures previously ensured that payments were made thirty days prior to policy expiration.

[20] These facts were not contained within the parties agreed-upon stipulations and, therefore, are contested.

[21] Rec. Doc. 5-1 at p. 9.

[22] *Id.*

cancelled, or non-renewed."[23] According to Plaintiff, Nationstar emailed Plaintiff saying he needed to obtain new coverage; however, Nationstar attached a letter from State Farm which stated that the policy was being transferred to National Flood Insurance Program Direct ("NFIP Direct"), not cancelled.[24] Plaintiff alleges that Nationstar was responsible for making flood insurance payments from Plaintiff's escrow account and that Plaintiff remains uncertain as to the status of his flood insurance policy.[25]

Nationstar contends that State Farm was withdrawing from the National Flood Insurance Program ("NFIP") and non-renewing all current policies, causing Nationstar to notify the borrower under Nationstar's standard procedure.[26] Nationstar alleges that a formal non-renewal notice was issued by State Farm on June 28, 2011, advising that State Farm would stop selling and renewing flood insurance on October 1, 2011.[27] Nationstar states that State Farm noted that Plaintiff's policy would be transferred to NFIP Direct, which issued a renewal notice and payment coupon to Plaintiff on August 1, 2011.[28] Nationstar asserts that Plaintiff advised Nationstar that he would select "increased coverage" and that ASIC then remitted the premium payment to NFIP Direct on September 18, 2011, per Plaintiff's request.[29] Nationstar states that Plaintiff is currently insured for

---

[23] *Id.* at p. 8.

[24] *Id.*

[25] *Id.*

[26] Rec. Doc. 11 at p. 5.

[27] *Id.*

[28] *Id.*

[29] *Id.* at p. 6.

7

wind and fire damage through the renewed GeoVera policy and is insured for flood damage through NFIP Direct.[30]

Finally, Plaintiff alleges that Nationstar has not made his account whole and that he was notified on October 1, 2011 that his escrow account had insufficient funds to meet Plaintiff's needs.[31]

## II. Law and Analysis

### A. *Standard for Preliminary Injunction*

A preliminary injunction is an "extraordinary remedy which should not be granted unless the party seeking it has 'clearly carried the burden of persuasion'" on all required elements.[32] Four elements must be proven before a court will issue a preliminary injunction:

(1) A substantial likelihood of success on the merits,

(2) A substantial threat of irreparable harm if the injunction is denied,

(3) That the threatened injury to the movant outweighs the injury to the nonmovant, and

(4) That granting the injunction will not disserve the public interest.[33]

---

[30] *Id.*

[31] Rec. Doc. 17 at p. 1.

[32] *Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 196 (5th Cir. 2003) (quoting *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985)); *see also Sugar Busters LLC v. Brennan*, 177 F.3d 258, 265 (5th Cir. 1999).

[33] *Lake Charles Diesel*, 328 F.3d at 195-96 (citing *Canal Auth. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974)).

If the plaintiff fails to meet his burden regarding any one of the necessary elements, a court need not address the other elements necessary for granting a preliminary injunction.[34] At all times, the burden of persuasion remains on the plaintiff as to each of these four elements.[35] Whether to grant or to deny a preliminary injunction is within the discretion of the trial court,[36] but "[t]he decision to grant a preliminary injunction is to be treated as the exception rather than the rule."[37]

## B. *Substantial Threat of Irreparable Harm*

In order to obtain a preliminary injunction, a plaintiff must demonstrate that, absent the requested injunctive relief, the plaintiff will be subject to a substantial threat of irreparable harm.[38] To meet this burden, a plaintiff must demonstrate the threat of irreparable harm by independent proof, or no injunction may issue.[39] In order to demonstrate irreparable harm, "[s]pecutaltive injury is not sufficient; there must be more than an unfounded fear on the part of the applicant."[40] In other words, the threat of injury must not be merely conjectural in order for it to rise to the level of

---

[34] *See Roho, Inc. v. Marquis*, 902 F.2d 356, 361 (5th Cir. 1990) (declining to address the remaining elements necessary to obtain a preliminary injunction after finding that plaintiff failed to show a substantial likelihood of success on the merits); *see also Am. Telnet, Inc. v. GTE Corp.*, No. 99-0280D, 1999 WL 242686, at *2-*3 (N.D. Tex. Apr. 16, 1999) (addressing only the irreparable harm element, having assumed plaintiff met the other elements, and denying plaintiff's motion because plaintiff failed to show a substantial likelihood of irreparable harm).

[35] *Callaway*, 489 F.2d at 573 (vacating an injunction where the district court improperly placed the burden of persuasion on the defendants to prove the injunction should not be granted, rather than requiring plaintiffs to carry their burden).

[36] *Apple Barrel Prods., Inc. v. Beard*, 730 F.2d 384, 386 (5th Cir. 1984).

[37] *Miss. Power & Light*, 760 F.2d at 621.

[38] *Lake Charles Diesel*, 328 F.3d at 195-96.

[39] *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989) (citing *Enterprise Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985)).

[40] *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985).

irreparable harm.[41]  Further, when a plaintiff will adequately be compensated by monetary damages, a showing of irreparable injury is precluded.[42]

In his motion, Plaintiff argues that he and numerous others have suffered and are suffering irreparable harm as a result of Nationstar's practices and procedures regarding the payment of Plaintiff's insurance premiums.[43]  Plaintiff contends that "Nationstar's actions have a continuing damaging non-pecuniary effect including anxiety and concern over whether [Plaintiff's] home is insured, particularly during hurricane season."[44]  Specifically, Plaintiff argues that the uncertainty concerning his flood and hazard insurance policies constitutes irreparable harm because flood insurance cannot be purchased with an immediate effective date and hazard insurance cannot be purchased when there is an active disturbance in the area.  For support, Plaintiff relies on *Dillard University v. Lexington Insurance Company*,[45] wherein a preliminary injunction was issued prohibiting defendants from modifying plaintiff's insurance in such a way that would leave plaintiff severely underinsured.  In *Dillard*, the court found that the plaintiff faced a substantial risk of irreparable harm if defendants were not required to insure plaintiff under the previous terms of their insurance agreement because plaintiff would have to cease its operations and would run the risk of

---

[41] *Morgan v. Fletcher*, 518 F.2d 236, 240 (5th Cir. 1975) (citing *Soldevila v. Sec'y of Agric. of United States*, 512 F.2d 427, 430 (1st Cir. 1975)).

[42] *See DFW Metro Line Servs. v. Southwestern Bell Tel. Co.*, 901 F.2d 1267, 1269 (5th Cir. 1999).

[43]  Plaintiff also relies on Louisiana caselaw to argue that a showing of irreparable harm need not be demonstrated when the conduct sought to be restrained is unlawful.  However, as explained above, to obtain a preliminary injunction in federal court, the applicant must demonstrate the likelihood of irreparable harm.  *See White*, 862 F.2d at 1211.

[44]  Rec. Doc. 5-1 at p. 10.

[45]  466 F. Supp. 2d 723 (E.D. La. 2006) (Lemmon, J.).

losing its accreditation, reputation, students, and faculty if it remained severely underinsured.[46] Plaintiff also relies on *Sporting Land, LLC v. CHC Energy, LLC*[47] for the proposition that this Court must consider particularized inconveniences when determining whether irreparable harm exists. Plaintiff notes that the court in *Sporting Land* found a threat of irreparable harm in the potential deprivation of the "right to hunt undisturbed during a limited time period each year," which was "of utmost importance" to plaintiff and which he "worked so diligently to protect."[48] Thus, Plaintiff argues that these two cases instruct that an overly literal view of the "not compensable by money" standard should not be employed because the plaintiffs in these actions could technically have been compensated with monetary damages and yet, an injunction was granted. Plaintiff argues that his uncertainty surrounding his flood insurance is comparable to the plaintiffs in these cases, and as such, that he has demonstrated irreparable harm.

In its opposition, Nationstar argues that Plaintiff cannot establish a threat of irreparable harm. Nationstar argues that to the extent that Plaintiff had, at any time, anxiety and concern over whether his home had insurance, this anxiety and concern cannot be ongoing because the facts establish that Plaintiff now has flood and homeowner's insurance policies. Moreover, Nationstar argues that because ASIC has compensated Plaintiff for the fire damage, Plaintiff also fails to show irreparable harm. Further, Nationstar argues that Plaintiff has an adequate remedy at law for his mental anguish because the Louisiana Civil Code provides that Plaintiff may recover monetary damages for such

---

[46] *Id* at 728.

[47] No. 07-1692, 2007 U.S. Dist LEXIS 85373, at *17 (W.D. La. Nov. 16, 2007).

[48] *Id.*

11

anguish.[49] Finally, Nationstar argues that any ongoing injury related to a lack of flood insurance is Plaintiff's own fault because Plaintiff is responsible for procuring his own flood insurance and Nationstar is not authorized to purchase such voluntary insurance on Plaintiff's behalf.

Nationstar then argues that *Dillard* and *Sporting Land* are distinguishable from the instant matter. Nationstar argues that in *Dillard*, the court found that the plaintiff was threatened with irreparable harm because it risked "losing its accreditation, its reputation, and its students and faculty" if the court did not enjoin the defendant insurer from wrongfully cancelling its policy pending the completion of Hurricane Katrina-related damage repairs because the college might have had to cease operations.[50] Further, Nationstar argues that, unlike the plaintiff in *Sporting Land*, Plaintiff has not established that he has been deprived of something of "utmost importance" or something he "worked so diligently to protect."[51]

In reply, Plaintiff argues that Nationstar's failure to timely pay Plaintiff's insurance premium is "the direct result of [Nationstar's] flawed 'standard procedure' which must be changed in order to prevent irreparable harm to Plaintiff and others similarly situated."[52] Further, in Plaintiff's supplemental briefing, Plaintiff argues that even though he has been compensated by ASIC, he is not without injury. Plaintiff argues that Nationstar's failure to address systematic errors that caused Plaintiff's situation and Nationstar's failure to change its policies and procedures to ensure that this situation does not reoccur entitle Plaintiff to a preliminary injunction. However, Plaintiff fails to

---

[49] Rec. Doc. 11 at p. 21 (citing La. C. C. arts. 1997, 1998).

[50] *Id*. at p. 22 (citing *Dillard*, 466 F. Supp. 2d at 728).

[51] *Id*. (citing *Sporting Land*, 2007 U.S. Dist. LEXIS 85373, at *17).

[52] Rec. Doc. 17 at p. 7.

articulate what specific irreparable harm these procedures cause.

In arguing that Plaintiff's entitlement to an injunction is not obviated because Plaintiff already has been compensated for his losses, Plaintiff relies on two cases arising under the Fair Labor Standards Act ("FLSA"). First, Plaintiff argues that *Walling v. Helmerich & Payne, Inc.*[53] stands for the proposition that the mere cessation of a violation under the FLSA does not render moot the need for an injunction. Additionally, Plaintiff relies on a Fifth Circuit case, *Mitchell v. Strickland Transportation Co.*, which Plaintiff contends explains why injunctions for violations of the FLSA may be appropriate even after a violation has ceased.[54] Plaintiff relies on the following language from *Mitchell*:

> [T]his follows . . . because otherwise recalcitrant employers can gamble by violating the terms of the [FLSA] and avoid the higher payments due their employees until final judgment is entered against them. This results because the law forbids the awarding of back pay in actions for an injunction . . . .[55]

Plaintiff alleges that, like in the FLSA context, an injunction is appropriate here because a mortgage servicer, such as Nationstar, should not be allowed to operate a system that risks its borrowers' insurance until a time at which a loss occurs. Specifically, Plaintiff contends that Nationstar has not addressed the systemic errors which caused Plaintiff's situation and that Nationstar has failed to change its policies and procedures to ensure that Plaintiff's situation does not occur again, and that, as such, Plaintiff is entitled to injunctive relief from these policies.

In Nationstar's sur-reply, Nationstar argues that Plaintiff cannot show a substantial threat of irreparable injury because Plaintiff has not put forth any evidence that the harm experienced by

---

[53] 323 U.S. 37, 43 (1944).

[54] 267 F.2d 821 (5th Cir. 1959).

[55] *Id.* at 823.

13

Plaintiff will happen again and, therefore, Nationstar argues that the threatened harm is merely conjectural. Nationstar argues that the circumstances that led to Randolph's injuries were an aberration brought upon by a confluence of unlikely events, including renewal notices not being sent to Nationstar because GeoVera did not list Nationstar as the servicing agent on the policy; ASIC's premium renewal check not being received until some time after it was sent; and an insured loss occurring within forty-eight hours of the cancellation of the policy. Therefore, Nationstar argues that a preliminary injunction is not appropriate because there is no harm here, much less a threat of continuing irreparable harm.

The Court finds that Plaintiff has not met his heavy burden of demonstrating the existence of a threat of irreparable harm were the Court not to grant a preliminary injunction. First, the FLSA cases cited in Plaintiff's supplemental briefing are inapposite to the situation at hand. The Court notes that the quotation from *Mitchell* offered by Plaintiff was not the Fifth Circuit's rationale for why an injunction was appropriate, but rather that it was the court's explanation of the appellant's argument as to why he believed injunctions were appropriate in FLSA cases even when the employer had already voluntarily changed its practices.[56] In fact, in that case, the court found that an injunction was *not* appropriate, and the court affirmed the district court's denial of the injunction.[57] Additionally, the argument advanced was largely based upon the fact that employees were not allowed to obtain back pay in such suits, meaning that monetary relief was not available to plaintiffs in those situations where an employer had earlier violated the FLSA but was now

---

[56] *Id.*

[57] *Id.* at 824.

compliant.[58] Here, however, Plaintiff has articulated no reason that he would not be entitled to monetary relief were the complained-of practices to result in future harm.

In this case, Nationstar has provided evidence that it obtained homeowner's insurance for Plaintiff through GeoVera and flood insurance for Plaintiff through NFIP Direct.[59] Further, the parties have both noted that Nationstar calendared the renewal payment for the homeowner's insurance policy to be paid fifteen days prior to the due date; thus, there is no substantial risk that the events that led to the previous lapse in insurance coverage will happen again. Moreover, no parties have indicated that this renewal was not paid. Therefore, any threat of harm is merely speculative at this point. Moreover, the parties have agreed that GeoVera now correctly recognizes Nationstar, and not Wells Fargo, as the mortgagee on Plaintiff's policy, such that renewal notices will be sent to Nationstar, which would be able to take action to avoid any future lapses in coverage. These facts demonstrate that there is no substantial and non-speculative threat that Plaintiff will face another lapse in coverage.

Additionally, Plaintiff's reliance on *Dillard* and *Sporting Land* is misplaced. In *Dillard*, the court found that the plaintiff faced the threat of irreparable harm because if plaintiff, a university, suffered severe damage from another hurricane, after suffering damages from Hurricane Katrina, and did not have adequate insurance in place because defendants did not renew the insurance policies at issue, the university could lose its accreditation, its reputation, its students, and its faculty.[60] Here, Plaintiff appears to argue that he is entitled to his requested injunctive relief because

---

[58] *Id.* at 823.

[59] GeoVera Homeowner's Policy, Rec. Doc. 22-5 (homeowner's insurance); Declaration of Kathy Ward, Rec. Doc. 11-7 at ¶ 24 (flood insurance).

[60] *Dillard*, 466 F. Supp. 2d at 728.

15

the plaintiff in *Dillard* was entitled to an injunction requiring defendants to provide adequate insurance coverage. However, Plaintiff has not provided any evidence or argument that he would face extreme, adverse consequences akin to those that threatened the plaintiff in *Dillard* if this Court were to deny him the requested injunctive relief.

Further, in *Sporting Land*, the court found irreparable harm when, in the absence of an injunction, the plaintiff would lose the right to hunt on certain land, which he had diligently sought to protect.[61] There, the court noted that no party disputed that this issue was of the utmost importance to the plaintiff, as he had gone through great lengths to preserve his ability to hunt on the land.[62] Here, Plaintiff simply has not shown that in the absence of an injunction, he would lose a similar right.

The only irreparable harm stemming from Nationstar's practices and procedures that Plaintiff has ever alleged is Plaintiff's anxiety and concern over whether his home is insured. However, Nationstar has provided evidence that Plaintiff now has insurance coverage, which alleviates these concerns and makes any future uncertainty speculative at best. Although Plaintiff argues that Nationstar continues to maintain a system that risks its borrowers' insurance coverage until a loss occurs, Plaintiff simply does not demonstrate how Plaintiff might suffer another lapse in coverage or how monetary damages would not compensate Plaintiff for any such future failure. In sum, Plaintiff has failed to meet his heavy burden of showing that he will suffer irreparable harm in the absence of the requested injunction. Thus, the irreparable harm element is dispositive, and this

---

[61] 2007 U.S. Dist. Lexis 85373, at *17.

[62] *Id*.

Court need not even consider whether Plaintiff might be able to satisfy the other requirements for this Court to grant a preliminary injunction.

### III. Conclusion

A plaintiff seeking a preliminary injunction must clearly carry his burden of persuasion on each of the required elements. Here, Plaintiff has failed to demonstrate that he faces a substantial threat of irreparable harm if the injunction is denied. Having failed to carry his burden on one of the required elements, this Court cannot grant Plaintiff's Motion for Preliminary Injunction. Accordingly;

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Preliminary Injunction[63] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this _26th_ day of June, 2012.

*Nannette Jolivette Brown*
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[63] Rec. Doc. 5.